**RYAN MORTGAGE INVESTORS,**
**Appellant,**

**v.**

**G. E. LEHMANN and Gordon H.**
**Monroe, Appellees.**

**No. 7866.**

Court of Civil Appeals of Texas,
Beaumont.

Oct. 28, 1976.

Rehearing Denied Dec. 9, 1976.

Stanford Harrell, Sam J. Day, Fort Worth, for appellant.

Jon Mercer, Houston, for appellees.

KEITH, Justice.

Defendant below appeals from two orders which (a) overrule its plea of privilege to be sued in Tarrant County and (b) granted a temporary injunction restraining it from foreclosing a deed of trust covering certain lands situated in Montgomery County. We will speak of the parties as they appeared in the trial court.

The record in voluminous and the fact structure is somewhat complicated; consequently, while we must make a lengthy statement, many facets of the case will escape mention.

This suit was instituted by the plaintiffs who were individual guarantors of a promissory note secured by a deed of trust upon certain land situated in Montgomery County. On December, 1, 1972, Associated Mortgage Investors, a Massachusetts business trust ("AMI"), issued its commitment letter to Lake Conroe Equities, Inc., predecessor in title to Berton Land Development Corporation, a Texas corporation ("Berton"), whereby AMI committed itself to make a land acquisition loan in the amount of $7,300,000. Thereafter, on December 28, 1972, Berton executed its promissory note in such amount payable to AMI. On the same day, plaintiffs (Lehmann and Monroe), along with seven other individuals not parties hereto, executed a separate instrument entitled "Guarantee" under the terms of which they guaranteed payment of the loan made by AMI to Berton.

On January 5, 1973, Berton executed a deed of trust upon the land to secure the payment of the note mentioned. It was shown upon the trial that, although AMI was named as payee of the note, it was actually a joint participation of three real estate investment trusts with the appellant Ryan acting as the "lead" lender. Subsequently, the indebtedness was assigned to Ryan.

It is contended by the plaintiffs that Berton and the other interested purchasers of the land were planning to create a recreational community around Lake Conroe with Berton being the vehicle whereby the land would be acquired and developed subsequently. Plaintiffs contended that Ryan's agents made representations that a development loan would be made to Berton for which reason they signed the guarantee of the purchase money note now in dispute.

After the execution of the note, efforts to secure the development loan were unsuccessful and, when the land acquisition note became due one year from the date of its making, it was not paid by its maker, Berton; and, under the undisputed record, the note remains unpaid and in default.

Plaintiffs, although owning no record title to the land covered by the deed of trust, and notwithstanding that they were only guarantors of payment of the note, brought suit against Ryan alleging that fraudulent misrepresentations were made which induced the execution of the note and that the note was usurious. They sought, according to the statement of the nature of the suit in the preamble of their brief:

". . . Appellees asserted their cause of action in Usury seeking statutory damages and forfeiture of the principal balance alleged to be due on the loan contract with Appellant, and therefore, cancellation of the Deed of Trust lien securing that loan. Ancillary to the cause of action alleged, Appellees sought Temporary Injunction preventing a Trustee's Foreclosure Sale of the Deed of Trust so as to preserve the 'status quo' between the parties pending resolution of this dispute in final trial."

Plaintiff's original controverting affidavit filed on January 28, 1976, sought to maintain venue by invoking only subdivision 14 of Art. 1995, Tex.Rev.Civ.Stat.Ann. (1964). However, on the second day of the trial (February 20, 1976), plaintiffs filed what is styled "Plaintiffs' Trial Amendment to Controverting Affidavit to Defendant's Plea of Privilege" invoking subdivisions 7 and 23 as well as 14 of the venue statute.

At the conclusion of the hearing, the trial court entered orders overruling the plea of privilege and granting the temporary injunction. Further statements will be made in connection with the several points of error which we will discuss.

■ At the outset of our discussion, we recognize the rule enunciated in *Goodrich v. Superior Oil Co.*, 150 Tex. 159, 237 S.W.2d 969, 972 (1951):

"The general rule of venue is, of course, that a defendant shall be sued in his own county, and however many and important are the exceptions contained in the statute, an equal doubt between the exception and the rule is to be resolved in favor of the rule. Stated differently, the application of the exception must clearly appear."

See also, *B & C Construction Co. v. Grain Handling Corp.*, 521 S.W.2d 98, 101 (Tex. Civ.App.—Amarillo 1975, no writ), where the continuing validity of the *Goodrich* rule is recognized.

■ Plaintiffs' reliance upon subdivision 14 is misplaced. Under this subdivision, the venue facts are two: that his suit is for the recovery of land or for damages thereto and that a part of the land lay in the county of suit. *Cowden v. Cowden*, 143 Tex. 446, 186 S.W.2d 69, 71 (1945); *Piazza v. Phillips*, 153 Tex. 115, 264 S.W.2d 428 (1954). Ordinarily, except as to proof of the location of the land, the applicability of subdivision 14 depends wholly upon the allegations of the petition. See *Harwood v.*

*Hunt,* 473 S.W.2d 287, 293 (Tex.Civ.App.—Beaumont 1971, no writ); *Edgar v. Bartek,* 507 S.W.2d 831, 835 (Tex.Civ.App.—Corpus Christi 1974, writ dism'd).

■ It is clear that plaintiffs executed only one instrument, a "Guarantee" wherein they guaranteed payment of the loan made by defendant to Berton. Their petition does not contain an allegation that they owned or claimed any interest in the lands described in the deed of trust given to secure the promissory note. It was only during the course of the trial that plaintiffs sought to introduce a deed dated February 20, 1976 (the second day of the hearing), from Berton to plaintiffs purporting to convey an undivided one-fifteenth interest in the property covered by the deed of trust.[1]

Not having alleged title or legal interest in and to land lying in Montgomery County, plaintiffs may not maintain venue under subdivision 14 of the statute. *Harwood v. Hunt,* supra.

■ We next consider plaintiffs' reliance upon subdivision 23 of the venue statute, noting it is now the generally accepted rule that, in order to maintain venue under this subdivision, a plaintiff must prove a cause of action at the venue hearing. *Admiral Motor Hotel of Texas, Inc. v. Community Inns,* 389 S.W.2d 694, 698 (Tex.Civ.App.—Tyler 1965, no writ). See also, 1 McDonald, Texas Civil Practice § 4.30.2—(I), p. 518 (1965 Rev. Vol.), and authorities cited in the bound volume as well as in the 1976 Cum. Supp. at p. 48. In our discussion of this subdivision, we will consider plaintiffs' alleged claim of usury as supporting venue.

The note forming the basis of the litigation was executed only by "Berton Land Development Corporation" acting through its president and attested by its secretary. Neither signatures nor the names of the plaintiffs appear at any place on this note.

---

1. Defendants have now made it known to the Court that the Bankruptcy Court having jurisdiction of Berton did, by an order dated March 25, 1976, set aside said deed and decreed that plaintiffs "acquired no interest either legal or equitable" in such land. As to our authority to consider such evidence, see and compare *Board of Trustees of Georgetown Independent School District v. Kreger,* 369 S.W.2d 916 (Tex.1963).

Each of the plaintiffs executed a "Guarantee"—a separate instrument consisting of three and one-half printed pages obviously prepared by the lender's counsel. We reproduce in the margin a portion of the first paragraph of this instrument.[2]

Plaintiffs were, in the language of the Supreme Court in *Universal Metals and Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (1976), " . . . the kind of 'guarantors' which the instrument details; that is, guarantors who are primarily liable, who are jointly, severally and unconditionally liable for the prompt payment of principal and interest, when due and whether any action is taken against the maker or not."

Under the authority of *Bohart,* supra, we are of the opinion that the plaintiffs, being guarantors only, may not avail themselves of the claim of usury under the facts shown by this record. As said in *Hartnett v. Adams & Holmes Mortgage Co., Inc.,* 539 S.W.2d 181, 184 (Tex.Civ.App.—Texarkana 1976, no writ):

"In his status as an absolute guarantor, Jackson . . . is prohibited from prosecuting an action to recover a usury penalty by Tex.Rev.Civ.Stat.Ann. art. 1302–2.09. The article denies a guarantor of a corporate note, such as this in suit, the right to claim the note is usurious or defend upon that ground. *Universal Metals & Machinery, Inc. v. James T. Bohart, et ux.,* supra."

See also, *Micrea, Inc. v. Eureka Life Ins. Co. of Amer.,* 534 S.W.2d 348, 354–355 (Tex. Civ.App.—Fort Worth 1976, writ ref'd n.r.

e.). Plaintiffs' reliance upon subdivision 23 based upon the contention of a usurious note is misplaced, and their contentions with reference to usury supporting venue are overruled.

 We are likewise of the opinion that the plaintiffs may not maintain venue under subdivision 7 of the venue statute, the fraud section.[3] As stated in 1 McDonald, Texas Civil Practice § 4.13, pp. 465–466 (1965 Rev. Vol.), three venue facts must be established, each by a preponderance of the evidence:

"(I) That the fraud or defalcation did in fact occur. The evidence must establish all elements of an actionable fraud or defalcation, including the fact that the plaintiff sustained some actual damage as a result of such wrong. . . .

"(II) That the fraud or defalcation was committed by the defendant or by one for whose acts he is legally responsible. . .

"(III) That the fraud or defalcation occurred in the county of suit. . . ."

In our voluminous record we find no written commitment by anyone to lend funds for the development of the project. Only on page three of the commitment to make the land acquisition loan do we find any written reference to the development loan:

"AMI is hereby given the option to make the contemplated Development and Construction loans for future site improvements at the following rates and terms:

2. "In consideration of certain financial accommodations given or to be given by AMI INVESTMENTS, INC., hereinafter referred to as 'Lender', to BERTON LAND DEVELOPMENT CORPORATION, hereinafter referred to as 'Borrower', each of the undersigned (1) hereby unconditionally guarantees (a) the prompt payment of all indebtedness, as hereinafter defined, of Borrower to Lender, including, specifically the indebtedness evidenced by that certain Promissory Note dated December 28, 1972, in the principal amount of SEVEN MILLION THREE HUNDRED THOUSAND and No/100 Dollars ($7,300,000.00), with interest at the rate specified in said note, executed by Borrower, . . . ."

~~It is undisputed in our record that Ryan has not made any demand upon the guarantors for payment of either principal or interest due upon the note executed by Berton which they guaranteed; and, it is equally well established that no one—Berton, plaintiffs, or the other guarantors—has paid as much as a thin dime on principal or interest on the money advanced.~~

3. Art. 1995, § 7: "Fraud and defalcation.—In all cases of fraud, and in all cases of defalcation by public officers, suit may be brought in the county where the fraud was committed or where the defalcation occurred, or any of such suits may be brought where the defendant has his domicile."

[followed by a proposed interest rate for a term of three years]."

We have not been pointed to any document wherein there is an absolute commitment to make a development loan.

In the recent case of *Edward Scharf Associates, Inc. v. Skiba,* 538 S.W.2d 501, 502 (Tex.Civ.App.—Waco 1976, no writ), the court cites several cases supporting the holding that where a contract contemplates the creation of a lien or mortgage, such contract is within the Statute of Frauds, and must be in writing to be enforceable. See Tex.Bus. & Comm.Code Ann. § 26.01 (1968).

There is yet another reason why the plaintiffs may not prevail under this subdivision of the venue statute: each testified unequivocally that he had only one meeting with any representative of Ryan wherein the proposed development loan was mentioned; and, each was certain that such meeting was held at the Warwick Hotel in Houston, Harris County. There is no evidence that either of the plaintiffs met with any representative of Ryan in Montgomery County or any representations were made to them by Ryan's agents in that county.

As Justice Cadena held in *Covington v. Eskridge,* 430 S.W.2d 589, 590 (Tex.Civ.App. —San Antonio 1968, no writ):

"Since there is no evidence even tending to show that either defendant committed any act of fraud in Wilson County, appellant cannot claim the protection of this exception."

*Accord: McGough v. Massey-Ferguson, Inc.,* 384 S.W.2d 154, 156 (Tex.Civ.App.— Eastland 1964, writ dism'd); *Fambrough v. Schooler,* 307 S.W.2d 590, 591–592 (Tex.Civ. App.—Eastland 1957, writ dism'd).

■ Moreover, we note that plaintiff's reliance upon this subdivision is predicated upon statements said to have been fraudulent which were in the nature of a promise to act in the future—i. e., make the developmental loan. Under these circumstances, "such statement cannot be legally said to be a fraudulent misrepresentation unless it is alleged and proved that at the time the statement or promise was made the person

making same did not intend to perform it." *Morgan v. Box,* 449 S.W.2d 499, 504 (Tex. Civ.App.—Dallas 1969, no writ). *Accord: Acoustical Scrs. in Color, Inc. v. T. C. Lordon Co., Inc.,* 524 S.W.2d 346, 349 (Tex.Civ. App.—Dallas 1975, writ ref'd n.r.e.); *Citizens Standard Life Insurance Co. v. Gilley,* 521 S.W.2d 354, 356 (Tex.Civ.App.—Dallas 1975, no writ); *Precision Motors, Inc. v. English,* 517 S.W.2d 371, 372 (Tex.Civ.App. —Beaumont 1974, no writ); *Brooks v. Parr,* 507 S.W.2d 818, 819–820 (Tex.Civ.App.— Amarillo 1974, no writ).

It necessarily follows from what has been said earlier that we are of the opinion that the trial court erred in overruling Ryan's plea of privilege to be sued in Tarrant County; consequently, we reverse that portion of the judgment and now render judgment transferring the entire cause to one of the district courts of Tarrant County, Texas.

■ The temporary injunction granted by the trial court was in the nature of an ancillary injunction. See *Winslow v. Duval County Ranch Company,* 519 S.W.2d 217, 220 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.), and cases therein cited. And, as stated in 6 Texas Practice, Remedies § 93, p. 143 (2d Ed.1973): "Injunctions which are ancillary to suits involving other causes of action are governed by the venue statutes applicable to the main suit."

■ We have already determined that venue for the main suit is in Tarrant County; thus we are of the opinion that the temporary injunction was improperly granted in the trial court. The temporary injunction is vacated, dissolved, and set aside.

Reversed and rendered; the temporary injunction is dissolved, and the cause is ordered transferred to a district court in Tarrant County.

STEPHENSON, J., not participating.

*On Motion for Rehearing*

Plaintiffs' counsel has now presented us with a lengthy motion for rehearing where-

in he includes eleven assignments of error. Such is the duty of an attorney at the bar; but, counsel has also included in this same instrument statements which coincide with those mentioned in *Rust v. Rust,* 88 S.W.2d 787, 794 (Tex.Civ.App.—Fort Worth 1935), modified, 131 Tex. 532, 117 S.W.2d 59 (1938). In so doing, it is apparent that counsel has failed to heed the admonitions of Honorable Garland F. Smith of the Weslaco Bar as found in Appellate Procedure in Texas, § 19.10 (State Bar of Texas, 1964).

■ We say, as was said in *City of San Antonio v. Santa Rosa Infirmary,* 249 S.W. 498, 510 (Tex.Civ.App.—San Antonio 1923), reversed on other grounds, 259 S.W. 926 (Tex.Com.App.1924, jdgmt. adopted):

"This court is not supersensitive, and gentlemen of the bar know that we invite their vigorous argument and forceful criticism, so long as such arguments and criticisms are respectful in language and intent. We ask no more than this; but all of it will be required.

"However, out of consideration for the rights of appellees, who, of course, are not responsible for the conduct of their counsel, we have concluded not to strike the objectionable documents from the files of the court, as first intended."

Notwithstanding counsel's approach to the questions presented, we have again reviewed the voluminous record and again will place a few of his present complaints against the record; and, having done so, the motion for rehearing is overruled for the reasons now to be stated.

Counsel cites to us the opinion in *Dorfman Development Co. v. American Commonwealth Development Co.,* 523 S.W.2d 268, 270 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ), stating:

"It is undisputed that this is a suit to cancel a Deed of Trust Lien. A suit to cancel a Deed of Trust Lien is one to remove an encumbrance within the mandatory application of subdivision 14."

A text was relied upon in *Dorfman* and it is clear that in order to maintain venue under the subdivision, the moving party (plaintiff) must be an owner. *Dorfman,* being a limited partner had standing to maintain the suit. Plaintiffs below, in the case at bar, were not owners.

■ Next, citing five no-writ cases holding that suits to cancel liens securing usurious notes may be maintained under subdivision 14, counsel contends that we erred in failing to retain venue in the county of suit. Again, he assumes his major premise; but, in our case, the plaintiffs have never owned the land; they were neither owners nor mortgagors; they were not parties to the liens; they were not authorized to maintain the suit to set aside the liens.

Counsel argues at considerable length what he conceives to be the holding in *Universal Metals & Machinery, Inc. v. Bohart,* 539 S.W.2d 874 (1976) concluding that our "contrary reasoning . . . is grotesquely fallacious."

We did, at least, submit two late cases supporting our views, neither of which is even mentioned by plaintiffs' counsel. One of the cases which we cited, *Micrea, Inc. v. Eureka Life Ins. Co. of Amer.,* 534 S.W.2d 348 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n.r.e.), was interesting in that plaintiffs' present counsel is shown to be the only attorney for the losing party, Micrea, Inc. His failure to mention this decision, under the circumstances, may be understandable, but is inexcusable. Although not of counsel in *Hartnett v. Adams & Holmes Mortgage Co., Inc.,* 539 S.W.2d 181 (Tex. Civ.App.—Texarkana 1976, no writ), plaintiffs' counsel in this case again fails to mention the decision which is squarely in point in the case at the bar.

Counsel takes us to task for having noted that the plaintiffs testified that they each had only one meeting with any representative of Ryan and that was in the Warwick Hotel in Houston. We have checked the record and find that our statement so made was true.

Plaintiff Lehmann testified:

"Q. You met with Mr. Thorne [Ryan's representative] one time, is that right?

"A. Right.

"Q. And I believe you all had dinner in the Warwick Hotel in Houston?

"A. Right."

Plaintiff Monroe, mentioning his conversation with Thorne at the Warwick Hotel meeting attended by Lehmann, did *not* testify as to any meetings with or representations made to him by any representative of Ryan in Montgomery County. Instead, the testimony upon which plaintiffs' counsel relies is that of the erstwhile president of Berton Land—not from either of the plaintiffs in this case.

Neither of our plaintiffs was interrogated as to whether he relied upon representations made to other people in Montgomery County and communicated by these people to the plaintiffs.

Finding no merit in any of the contentions advanced in the motion for rehearing, it is overruled.

STEPHENSON, J., not participating.